## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**EDWARD KEITH JOHNSON, JR. (#379494)**                    **CIVIL ACTION NO.**

**VERSUS**                                                                    **20-356-JWD-SDJ**

**DARREL VANNOY, et al.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 12, 2023.

_____

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**EDWARD KEITH JOHNSON, JR. (#379494)**                     **CIVIL ACTION NO.**

**VERSUS**                                                                          **20-356-JWD-SDJ**

**DARREL VANNOY, et al.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody filed by Edward K. Johnson, who is proceeding *pro se*[1] and who is confined at the Louisiana State Penitentiary in Angola, Louisiana.[2]  In his Petition, Johnson argues the following three grounds for relief: (1) denial of access to expert witness analysis of videotaped material, (2) denial of effective assistance of trial counsel, and (3) denial of effective assistance of appellate counsel.[3]  Respondent, the State of Louisiana, filed an Answer to Johnson's Petition and Memorandum in support.[4]  As Johnson has not shown that the state courts' adjudication of any of his claims either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"[5] it is recommended that Johnson's Petition be denied.  There is no need for oral argument or for an evidentiary hearing.

---

[1] The Court notes that Johnson was counseled when he filed his Petition but that his counsel withdrew while this Petition was pending.  *See* R. Doc. 20.
[2] R. Doc. 1.
[3] R. Doc. 1.
[4] R. Doc. 18.
[5] 28 U.S.C. §2254(d).

I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On May 18, 2015, a Bill of Information for molestation of a juvenile under the age of 13 was issued for Johnson.[6]  Johnson subsequently was indicted by a grand jury on June 18, 2015, for one count of aggravated rape in violation of La. R.S. 14:42.[7]  Johnson was found guilty of aggravated rape by unanimous verdict on August 16, 2017, following a jury trial.[8]  He was sentenced on September 11, 2017, to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[9]  Johnson sought a direct appeal with the Louisiana Second Circuit Court of Appeal, which affirmed his conviction and sentence on August 15, 2018.[10] Johnson did not seek writs of supervisory review from the Louisiana Supreme Court.

On or about August 15, 2019, Johnson filed a counseled application for post-conviction relief.[11]  The trial court denied Johnson's PCR application on September 27, 2019.[12]  Johnson then filed an application for supervisory writs with the Second Circuit, which application was denied on January 8, 2020.[13]  The Louisiana Supreme Court similarly denied writs on May 14, 2020.[14] This Petition followed.

In its denial of Johnson's direct appeal, the Second Circuit succinctly summarized the factual and state procedural background of this matter as follows:[15]

> On June 18, 2015, 53-year-old Edward K. Johnson … was indicted for the aggravated rape of A.D., who was born on April 22, 2008.  The bill of indictment alleged the offense occurred between January and March of 2015, when A.D. was six years old.  On August 16, 2017, a jury unanimously found Johnson guilty as charged.  On September 11, 2017, Johnson filed a motion for new trial and motion

---

[6] R. Doc. 17-7, p. 216.
[7] R. Doc. 17-7, p. 217.
[8] R. Doc. 17-6, pp. 106-07.
[9] R. Doc. 17-6, p. 114.
[10] R. Doc. 17-7, pp. 3-21; *see also State v. Johnson*, No. 52,128 (La.App. 2 Cir. 8/15/18), 253 So.3d 887.
[11] R. Doc. 17-7, pp. 31-57, including memorandum in support.
[12] R. Doc. 17-7, pp. 243-45.
[13] R. Doc. 17-9, p. 205.
[14] R. Doc. 17-9, pp. 221-22; *see also State v. Johnson*, No. 2020-236 (La. 5/14//2020), 296 So.3d 602 (Mem.).
[15] R. Doc. 17-7, p. 4.

for post-verdict judgment of acquittal. Both were denied by the trial court. Thereafter, the trial court sentenced Johnson to mandatory life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

## II.   LAW & ANALYSIS

### A.   Johnson's Petition is Timely

The Court turns first to whether Johnson's Petition is timely. The Antiterrorism and Effective Death Penalty Act of 1996 provides that a petitioner may file a habeas petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Causey v. Cain*, 450 F.3d 601, 603 (5th Cir. 2006), quoting 28 U.S.C. § 2244(d)(1)(A). Johnson filed his direct appeal on February 20, 2018.[16] The Second Circuit affirmed Johnson's conviction and sentence on August 15, 2018.[17] Because Johnson did not file an application for supervisory writs with the Louisiana Supreme Court, his conviction and sentence became final 30 days later, on September 14, 2018. *See Butler v. Cain*, 533 F.3d 314, 317 (5th Cir.2008) ("[T]he conviction becomes final when the time for seeking further direct review in the state court expires."). 335 days later, on August 15, 2019, Johnson filed his PCR application in the trial court.[18] The trial court subsequently issued an order denying the PCR application, after which the Second Circuit denied writs on January 8, 2020.[19] The Supreme Court similarly denied writs on May 14, 2020.[20] Johnson filed his Petition in this Court on June 11, 2020, 28 days later.[21] As a total of only 363 untolled days passed before Johnson filed his Petition, his habeas claims in this Court are timely.

---

[16] R. Doc. 17-6, p. 123.
[17] R. Doc. 17-7, pp. 2-21.
[18] R. Doc. 17-7, pp. 31-57.
[19] R. Doc. 17-7, pp. 243-45; R. Doc. 17-9, p. 205.
[20] R. Doc. 17-9, pp. 221-22.
[21] R. Doc. 1.

**B.    Johnson's Claims Have Been Exhausted**

Another threshold requirement for a habeas petition is that, subject to certain exceptions, the petitioner must have first exhausted all of his claims in state court before raising them in the federal district court.[22]  28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State....").  The exhaustion requirement is met when the substance of the federal habeas claims has been fairly presented to the highest state court. *Fisher v. Tex.*, 169 F.3d 295, 302 (5th Cir. 1999), citing *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).  Johnson raised all three of the claims presented here in his PCR application filed in the trial court.[23]  Upon denial of his PCR application by the trial court, Johnson sought writs of review with the Second Circuit, which were denied.[24]  The Louisiana Supreme Court denied Johnson's subsequent writ application."[25]  As Johnson previously presented all claims raised in the instant Petition to the highest court of the state, he has sufficiently exhausted all of his claims, such that the merits of each claim will be addressed.

**C.    The Claims Raised in the Petition Are Without Merit**

**1.    Standard of Review**

Under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

---

[22] The Court notes that Respondent has conceded that Petitioner has exhausted all of his claims.  *See* R. Doc. 18, at 1 ("Petitioner has raised the federal nature of all claims to the state courts, and has therefore exhausted his state court remedies…").

[23] R. Doc. 17-7, pp. 31-57.

[24] R. Doc. 17-8, pp. 2-13; R. Doc. 17-9, p. 205.

[25] R. Doc. 17-9, pp. 221-22.

resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Stated another way, relief is authorized if a state court arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court decided a case differently than the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Mere error by the state court or this Court's mere disagreement with the state court determination is not enough; the standard is one of objective reasonableness. *Id.*  State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### 2. Unconstitutionality of La. R.S. 15:440.5

Johnson's first claim is that he was unconstitutionally denied access to expert witness analysis of videotaped material, in violation of his right to prepare and present a defense as well as his right to confront his accusers.[26]  As argued by Johnson, during trial preparation, the State provided defense counsel with video recordings of interviews of minor victim A.D.;  A.L.D., A.D.'s half-brother; and E.N., A.D.'s minor uncle, all conducted at the Gingerbread House Children's Advocacy Center.[27]  Defense counsel asked that an expert witness for the defense "be allowed to view the tapes in order to provide advice to counsel in preparation for trial."[28]  The trial court denied defense counsel's request on the basis of the restrictions set forth in La. R.S.

---

[26] R. Doc. 1, pp. 32-38.
[27] R. Doc. 1, p. 32.
[28] R. Doc. 1, p. 32.

15:440.5.[29]   Defense counsel appealed this matter to the Second Circuit, which denied writs.[30] This issue was again raised on direct appeal, and again denied by the Second Circuit.[31]

As asserted by Johnson, La. R.S. 15:440.5(C) is unconstitutional because it "depriv[es] defendants of their right to prepare and present a defense, as well as their right to confront accusers."[32]   Per Johnson, "La. R.S. 15:440.5 prohibits defense counsel from hiring an expert to review the videotaped testimony made admissible in La. R.S. 15:440.1 *et seq.* … [and] prevents a defense team from adequately preparing for trial, because defense counsel will be unable to properly analyze the audio-visual recording for potential issues that may be raised on cross."[33]   He continues, "[t]he failure of the law to allow Mr. Johnson an expert to interpret A.D.'s body language, tone, and physical demeanor and effectively explain the relevance of these things, along with A.D.'s denials, on cross constituted a violation of Mr. Johnson's right to confront witnesses against him and present a defense."[34]   Johnson also claims that, without such expert analysis, "defense counsel was incapable of fully understanding the nature of the 'Gingerbread House' hearings."[35]

In its ruling on Johnson's PCR application, the trial court, in addressing this issue, stated only:[36]

> First, petitioner alleges that he was illegally denied access to an expert witness analysis of videotaped material.  However, La. R.S. 15:440.5 restricts the viewing of such material to the following members of a defense team: the attorney and his regularly employed staff, the defendant, the defense investigator and the defense paralegal designated to work on the case, and other staff members who are

---

[29] R. Doc. 1, p. 32.
[30] R. Doc. 1, p. 32.
[31] R. Doc. 1, p. 32.
[32] R. Doc. 1, pp. 32-33.
[33] R. Doc. 1, p. 33.
[34] R. Doc. 1, p. 35.
[35] R. Doc. 1, p. 37.
[36] R. Doc. 17-7, p. 243.

transcribing the videotaped oral statement.  As such, an expert witness is not a member who is allowed viewing access of the videotaped material.

Although terse, this is clearly an adjudication of Johnson's claim on the merits and, as such, is entitled to deference under AEDPA.  *See Trottie v. Stephens*, 720 F.3d 231, 240 (5th Cir. 2013) (recognizing AEDPA's "highly deferential standard" which "demands that state-court decisions be given the benefit of the doubt").

La. R.S. 15:440.5(C) provides, in its entirety:

> In a criminal prosecution, when the state intends to offer as evidence a copy of a videotaped oral statement of a protected person made pursuant to the provisions of this Subpart, the defendant, through his attorney only, may be provided a copy of the videotape if the court determines it necessary to prepare a proper defense.  If the defendant's attorney is provided a copy of the videotaped statement by court order or by permission of the district attorney, only the following persons involved in preparing the defense of the instant charges shall be permitted to view the videotape: the attorney and his regularly employed staff, the defendant, the defense investigator designated to work on the case, the defense paralegal designated to work on the case, and other staff members of the attorney who are transcribing the videotaped oral statement.  Other than a transcript of the videotaped oral statement, no copies of the videotape shall be made by any person, except for use as trial exhibits.  The copy of the videotaped statement and any transcripts shall be securely retained by the defendant's attorney at all times and shall not be possessed, transferred, distributed, copied, or viewed by any unauthorized party.  It shall be the affirmative duty of the defendant's attorney to return the videotape to the court immediately upon conclusion of the case, but in all cases prior to sentencing.  A defendant who appears pro se in a criminal proceeding shall be allowed reasonable access to the videotape of a protected person only with an order of the court and under court-directed supervision.  The tape shall be filed as part of the record under seal by the clerk of court for use in subsequent legal proceedings or appeals and shall be released only upon motion of the state or counsel of record with an order of court and in compliance with this Section.  Any violation of this Subsection shall be punished as contempt of court.  Any person who makes an unauthorized disclosure of the videotape or its contents may also be subject to liability for civil damages, including punitive damages.

The statute clearly specifies the people who are allowed to view a videotaped statement of a protected person, here, the minor victim and his minor uncle.[37]  An expert witness for the defense

---

[37] As set forth in La. R.S. 15:440.2(C), a "protected person" is "any person who is a victim of a crime or a witness in a criminal proceeding and who is any of the following: (1) Under the age of eighteen years."

is not among those listed. Thus, the Court first turns to whether this exclusion violates Johnson's right to confront accusers and/or prepare a defense in violation of the Sixth and Fourteenth Amendments.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005), quoting *U.S. v. Scheffer*, 523 U.S. 303, 329 n. 16 (1998). "The Sixth Amendment right to present a complete defense encompasses a defendant's rights under the Confrontation Clause to rebut the State's evidence through cross-examination." *Id.* (citations omitted). "The Confrontation Clause generally bars witnesses from reporting the out-of-court statements of nontestifying declarants." *Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008), citing *Crawford v. Washington*, 541 U.S. 36, 54-56 (2004).

La. R.S. 15:440.5(A) sets forth the circumstances required for admission of a videotape of an oral statement of a protected person made before trial began. The statute clearly mandates that for such a videotaped statement to be admissible, "[t]he person conducting or supervising the interview of the protected person in the recording is present at the proceeding and available to testify or be cross-examined by either party." La. R.S. 15:440.5(A)(6). In addition, the statute also requires that "[t]he protected person is available to testify." La. R.S. 15:440.5(A)(8). Here, the Gingerbread House interviewers testified at trial, as did the interviewees in the tapes. This fact is not disputed by either party, and the trial transcript reflects that defense counsel cross-examined all of these witnesses.[38]

---

[38] R. Doc. 24-3, p. 5.

Moreover, La. R.S. 15:440.5(B) specifically states: "The admission into evidence of the videotape of a protected person as authorized herein shall not preclude the prosecution from calling the protected person as a witness or from taking the protected person's testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation." The statute specifically addresses, and dismisses, Johnson's concerns, having intentionally set in place safeguards to protect a defendant's rights as well as those of protected persons. The Court therefore finds Johnson's rights to prepare and present a defense and to confront witnesses against him were preserved.

As recognized by Johnson in his Petition, the Louisiana Supreme Court directly addressed this issue in *State v. In re A.M.*, 2008-2493 (La. 11/21/08), 994 So.2d 1277, finding La. R.S. 15:440.5(C) was not unconstitutional. In *In re A.M.*, the Supreme Court was presented with the question of whether defense counsel's expert should be granted access to videotaped interviews of the minor victim and minor witness, both protected persons. *Id.* at 1278. The Supreme Court first determined that the language of the statute prohibited an expert for the defense from viewing such tapes, noting the statutory language "clearly indicate[s] the legislature's intent to limit strictly pre-trial access by the defense to the videotaped statements."[39] *Id.* at 1279. Then, turning to the constitutionality of said statute, the court found that "the statute does not violate defendant's constitutional right of confrontation," citing the statutory language, set forth above, that admission of videotaped statements does not preclude the prosecution from calling the protected person as a

---

[39] The Court notes that in 2014, after the decision in *In re A.M.*, the legislature again amended La. R.S. 15:440.5(C) to further specify those persons who were allowed to view videotaped statements of protected persons prior to trial. Prior to 2014, the statute stated: "only the attorney and the defendant shall be permitted to view the tape, and no copies shall be made by any person." This language was amended in May 2014 as follows: "the following persons involved in preparing the defense of the instant charges shall be permitted to view the videotape: the attorney and his regularly employed staff, the defendant, the defense investigator designated to work on the case, the defense paralegal designated to work on the case, and other staff members of the attorney who are transcribing the videotaped oral statement. Other than a transcript of the videotaped oral statement, no copies of the videotape shall be made by any person, except for use as trial exhibits." 2014 La. Sess. Law Serv. Act 138 (S.B. 326).

witness or having his or her testimony taken outside of the courtroom and that "[n]othing in this Section shall be construed to prohibit the defendant's right of confrontation." *Id.* The court continued:

> Given the substantial state interest in prosecuting crimes of violence against protected persons "with a minimum of additional intrusion into the lives of such protected persons," La. R.S. 15:440.1, the legislature may also assume that reasonably competent counsel provided with pre-trial disclosure of the recorded statements made by protected persons possess the requisite tools to prepare for cross-examination as they may in any other case unaided by a psychologist or an investigator, or, for that matter, a law partner, whose contributions may, to some indeterminate degree, or may not, aid in the process. In this context, a defendant's due process right to present a defense and his Sixth Amendment right to the effective assistance of counsel guarantee him no more and no less than what the Confrontation Clause of the Sixth Amendment otherwise secures to him: "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (internal quotation marks and citations omitted).

*Id.* at 1280. Thus, the Supreme Court found the defendant's expert was not allowed access to the videotaped interviews per La. R.S. 15:440.5. *Id.*

In his Petition, Johnson argues that "[t]here are two significant errors in this opinion as to federal law."[40]  First, Johnson claims "the court expects attorneys to possess a breadth of knowledge that is unrealistic."[41]  Second, he claims that "the court significantly overestimates the scope of intrusion into the lives of persons protected under La. R.S. 15:440.5."[42]  The Court disagrees and finds these arguments without merit.  In implementing this statute, it is clear from the language therein that the legislature not only has allowed enough people access to the videotaped statements to allow a defendant to mount a defense, but has also set in place other safeguards, such as requiring both the interviewer and interviewee to both be available to testify,

---

[40] R. Doc. 1, p. 34.
[41] R. Doc. 1, p. 34.
[42] R. Doc. 1, p. 34.

to specifically protect a defendant's Sixth and Fourteenth Amendment rights. As such, the Court does not find that the decision of the trial court is contrary to or an unreasonable application of clearly established federal law, and Johnson should not be entitled to relief on this claim.

### 3.    Ineffective Assistance of Trial Counsel[43]

In his Petition, Johnson argues that his trial counsel was ineffective for the following three reasons: (1) failing to "move to strike the improperly entered evidence of Ms. Alex Person's testimony on the grounds that Ms. Person impermissibly asked leading questions of A.D. during the 'Gingerbread Hearing'"; (2) failing "to object to the enormous amount of inadmissible hearsay that comprised the testimony of Ms. Kiersten Prochnow, a so-called 'fact witness' for the state"; and (3) failing to move for a mistrial when Ms. Kiersten Prochnow, "under the State's direction … impermissibly exceeded the scope of testimony permitted a fact witness and made a conclusion as to the ultimate issue of fact in the case."[44]

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a habeas petitioner who claims that his counsel was ineffective must show the following: (1) that his counsel's performance was "deficient," *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial in which the result is reliable. *Strickland*, 466 U.S. at 687. The petitioner must make both showings to obtain habeas relief based on alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured

---

[43] R. Doc. 1, pp. 39-41.
[44] R. Doc. 1, p. 39.

by prevailing professional standards. *Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy. *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Id.* at 816.

Even if the petitioner satisfies the first prong of the *Strickland* test, his petition must still demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). It is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin*, 796 F.2d at 816-17. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id*. at 817. A habeas petitioner must "affirmatively prove," not just allege prejudice. *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009), citing *Strickland*, 466 U.S. at 693. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply together, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). The Court addresses each of Johnson's arguments, in turn, below.

       **a.**      **Counsel did not move to strike improperly entered evidence of forensic interviewer[45]**

Johnson first argues that the "Gingerbread testimony" of Alex Person is impermissible based on La. R.S. 15:440.5(A)(4).[46]  As established by La. R.S. 15:440.5(A)(4), "[t]he videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if [t]he statement was not made in response to questioning calculated to lead the protected person to make a particular statement."  Johnson argues that "[d]uring his cross-examination of Ms. Person, [defense counsel] clearly showed that Ms. Person's questioning of A.D. was so calculated," but that defense counsel "failed to move that the testimony be struck on these grounds."[47]

In reviewing Johnson's ineffective assistance of counsel claims in his PCR application, the trial court found that "[n]one of the allegations set forth in Petitioner's application are sufficient to prove that defense counsel failed to exercise reasonable professional judgment, and therefore he has failed to meet the two-prong test pursuant to *Strickland*."[48]  The trial court does not otherwise expound on its ruling.

Here, while Johnson argues that Person's "testimony" is "impermissible," in citing to La. R.S. 15:440.5(A)(4), Johnson actually appears to be challenging the videotaped interviews conducted by Person at the Gingerbread House.  In his Petition, as stated above, Johnson argues that defense counsel's cross-examination of Person "clearly showed that Ms. Person's questioning of A.D. was so calculated," meaning "calculated to lead the protected person to make a particular statement."[49]  However, Johnson in no way expounds on this argument.  While Johnson does cite

---

[45] R. Doc. 1, p. 40.
[46] R. Doc. 1, p. 40.
[47] R. Doc. 1, p. 40.
[48] R. Doc. 17-7, p. 244.
[49] R. Doc. 1, p. 40.

to certain pages of the trial transcript, he does not otherwise reference those citations, does not specifically reference any questioning by defense counsel or testimony by Person, and does not in any way analyze how said citations "clearly show" that Person's questioning was leading.  In fact, in the section of the trial transcript cited, defense counsel questions Person about whether her telling A.D. "I know something happened to you" was leading, Person answered "No" and explained her reasoning.[50]  The Court finds Johnson has not met his burden of proof on this claim. *See U.S. v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999) ("In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof.").  As Johnson has failed to carry his burden of proof, this claim should fail.

In addition, the trial court held a hearing prior to trial to determine the admissibility of the videotaped Gingerbread interviews.[51]  On the first day of the two-day hearing, Person was called as a witness, with defense counsel challenging her questioning of A.D. during his Gingerbread interviews, arguing it was leading.[52]  Defense counsel specifically argued at the hearings that Person's questioning of A.D. violated La. R.S. 15:440.5(A)(4) because it was calculated to lead A.D. to make particular statements.[53]  Following argument from both sides, the trial judge ruled that the videotaped interviews were admissible at trial.[54]

Defense counsel challenged admission of the evidence on the basis of La. R.S. 15:440.5(A)(4).  He fought its admission in a pretrial hearing.  Simply because, having resolved the issue prior to trial, he did not specifically bring a motion to strike at trial does not render his services ineffective.  Here, the Court  "must indulge a strong presumption that counsel's conduct

---

[50] R. Doc. 24-3, pp. 103-04 (101:11-102:32).
[51] R. Doc. 18-1, p. 24; R. Doc. 24-2, pp. 160-189; R. Doc. 24-2, pp. 190-208.
[52] *See* R. Doc. 24-2, pp. 175-187.
[53] R. Doc. 24-2, pp. 179-181; R. Doc. 24-2, pp. 202-205.
[54] R. Doc. 24-2, p. 207.

[fell] within the wide range of reasonable professional competence, or that, under the circumstances, the challenged action might be considered sound trial strategy." *Bridge*, 838 F.2d at 773, quoting *Strickland*, 466 U.S. at 689 (internal quotations omitted). It also must grant double deference to the findings of the state court. *Knowles*, 556 U.S. at 123. The Court finds that Johnson has failed to demonstrate that his counsel's representation fell below an objective standard of reasonableness. As the first prong of *Strickland* has not been met, the Court need not determine whether Johnson has demonstrated prejudice. *See Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014) ("Both of these [*Strickland*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong."). This claim by Johnson should be dismissed.

### b.    Counsel failed to object to inadmissible hearsay testimony of Kiersten Prochnow [55]

Next, Johnson claims his trial counsel was ineffective because "with few exceptions," he did not object to the testimony of Kiersten Prochnow, who, per Johnson, "[t]hroughout her testimony … recounted the out-of-court statements that A.D. told her, such as her testimony regarding A.D.'s declarations when her counseling session involved the use of dolls."[56] Johnson claims these statements were improper hearsay in violation of Louisiana Code of Evidence Article 801.[57] In support of his argument, Johnson cites to three portions of Prochnow's testimony, again providing no discussion or analysis about same.[58] The three portions cited all involve Prochnow testifying as to how A.D. identified who the dolls he used during his sessions represented. As these are the only statements cited by Johnson, these are the only statements by Prochnow the

---

[55] R. Doc. 1, p. 40.
[56] R. Doc. 1, p. 40.
[57] According to La. C.E. Art. 801(C), "'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."
[58] *See* R. Doc. 1, p. 40 n. 62.

Court will consider. *See Gomez v. Massey*, No. 18-348, 2020 WL 1495255, at *4 (S.D. Tex. Feb. 26, 2020) (finding a "broad hearsay objection … too general and vague" when the hearsay statements are not identified and noting "[s]imply screaming 'hearsay' at the top of your lungs without pointing out the alleged hearsay statement is not sufficient"); *Hoffman v. Bailey*, 257 F. Supp. 3d 801, 824 (E.D. La. 2017) ("It is not the Court's responsibility to comb through the record to determine the basis for [plaintiff's] cursory objections or to make arguments on his behalf").

Johnson fails to satisfy the prejudice prong set forth in *Strickland*. Johnson here takes issue with statements made by Prochnow relaying that A.D. identified the dolls, which he used to relay what happened to him, as himself and Johnson. However, other evidence and testimony in the case repeatedly corroborated that A.D. accused Johnson of performing sexual acts on him, including, *inter alia*, the videotaped Gingerbread interviews;[59] testimony by D.N., A.D.'s grandmother and the person to whom A.D. made his initial disclosure;[60] and testimony by Alex Person.[61] Johnson has failed to show how counsel's failure to object to Prochnow's statements identifying Johnson as A.D.'s accused attacker prejudiced him in any way in light of the other evidence and testimony before the court.

The Court therefore finds that Johnson has not shown that there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's failure to object to this specific testimony as hearsay. *See Woodfox v. Cain*, 609 F.3d 774, 816-17 (5th Cir. 2010) ("Because the [hearsay] testimony was cumulative of other evidence, we cannot hold that but for counsel's failure to object the results of the trial would have been different."); *Jordan v. Wilkinson*, 244 F.App'x 581, 582 (5th Cir. 2007) ("Given the overwhelming evidence against him,

---

[59] R. Doc. 24-3, p. 34.
[60] R. Doc. 24-3, pp. 41-63.
[61] R. Doc. 24-3, pp. 85-105.

[petitioner] has not shown that there was a reasonable probability that the result of the trial would have been different had his counsel objected to the hearsay evidence."); *U.S. v. Allie*, 978 F.2d 1401, 1408-09 (5th Cir. 1992) (holding on direct appeal that improper admission of hearsay evidence that was merely cumulative constituted harmless error). As Johnson has failed to satisfy the second prong of the *Strickland* standard, this claims for ineffective assistance of trial counsel should be denied.

### c.    Counsel failed to move for a mistrial when Prochnow exceeded the scope of permissible testimony[62]

Johnson's third and final allegation of ineffectiveness of trial counsel also concerns the trial testimony of Prochnow. Specifically, Johnson takes issue with Prochnow's response to the following question by the State: "the actions that [A.D.] showed you regarding the dolls … did that mean anything to you?"[63] Prochnow responded to this question by stating: "The actions meant that Ed raped him."[64] As argued by Johnson, "[t]his statement was more than merely exceeding her role as the alleged fact witness," it "was a conclusion as to the ultimate issue of fact at trial— whether Mr. Johnson had raped A.D."[65] Johnson continues that "[t]his is a violation of Louisiana evidence law, which explicitly prohibits even an expert witness, much less a fact witness, from providing an opinion as to the guilt[] of the accused," citing to Louisiana Code of Evidence Article 704.[66] Per Johnson, defense counsel "did not object on these grounds" and did not "move for

---

[62] R. Doc. 1, p. 41.

[63] R. Doc. 1, p. 41; R. Doc. 24-3, p. 162.

[64] R. Doc. 1, p. 41; R. Doc. 24-3, p. 163.

[65] R. Doc. 1, p. 41.

[66] R. Doc. 1, p. 41. Article 704 of the Louisiana Code of Evidence provides: "Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused."

either a mistrial or jury admonishment, which are the appropriate remedies in such circumstances," citing in support Louisiana Code of Criminal Procedure Article 771.[67]

The Court finds that an extended recounting of the exchange among counsel, Prochnow, and the court helpful and is as follows:[68]

> Q.     Yeah. Before we – before we get there, I want to ask you, were the actions that [A.D.] showed you regarding the dolls –
>
> A.     Uh-huh.
>
> Q.     -- did that mean anything to you?
>
> A.     Yes.  To me it meant that –
>
> MR. ENRIGHT:     Objection.  It's asking for an opinion from a fact witness.
>
> MS. GREEN:     Not at all, Your Honor.  If I may finish the question, I believe that Defense counsel – Defense counsel's concerns, he'll be able to lay those to the side.  I'm merely asking the witness – I intend to ask the witness what those actions represented to her.  That goes to present sense impression and if she can answer, I would ask the Court to allow her to do so.
>
> THE COURT:     Do you still maintain your objection?
>
> MR. ENRIGHT:     I maintain my objection.
>
> THE COURT:     Huh?
>
> MR. ENRIGHT:     I maintain my objection.
>
> THE COURT:     All right.  Based upon the State's explanation, the objection is overruled and the Defense's objection to the Court's ruling is noted for the record.  You may – you may answer the question.

---

[67] R. Doc. 1, p. 41.  Louisiana Code of Criminal Procedure Article 771 provides: "In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury: (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.  In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
[68] R. Doc. 24-3, pp. 162-63 (25:26-26:21).

A.    The actions meant that Ed raped him.

"Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact." *State v. Cotton*, 2016-0081 (La. App. 1 Cir. 9/16/16), 2016 WL 5018530, at *13.  Moreover, "in a criminal case, an ***expert*** witness shall not express an opinion as to the guilt or innocence of the accused." *Id.*, citing La. C.E. art. 704 (emphasis added).  Here, however, Prochnow was testifying only as a fact witness, not as an expert witness, so the limitation set forth in Article 704 is inapplicable here.

In addition, in reviewing the trial transcript, the Court finds that Prochnow is not expressing an opinion as to the guilt or innocence of Johnson.  Rather, in response to a direct question that the trial court, upon objection, specifically allows, Prochnow gives her opinion as to what A.D.'s actions with the dolls indicated.  Nothing more.  The Court notes that, in his Petition, Johnson argues that Prochnow's testimony "is a violation of Louisiana evidence law, which explicitly prohibits even an expert witness, much less a fact witness, from providing an opinion as to the guilt[] of the accused."[69]  However, in support of this, Johnson cites only to Article 704, which specifically limits the actions of expert witnesses and, in fact, makes no mention of fact witnesses. Courts "are bound to follow the plain and unambiguous meaning of the statutory language." *U.S. v. Hampton*, 633 F.3d 334, 337 (5th Cir. 2011), quoting *U.S. v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (internal quotations omitted).  As such, the Court cannot find that the same limitation that Article 704 places only on expert witnesses also applies to fact witnesses in the absence of any language to that effect.

Finally, it is clear from the trial transcript that, in response to the prosecution's question to Prochnow, defense counsel objected and continued to maintain his objection despite the

---

[69] R. Doc. 1, p. 41.

prosecutor's explanation. Johnson complains both because his counsel did not object on the grounds of Article 704 and because he did not move for either a mistrial or jury admonishment.[70] As discussed above, Article 704's limitation pertains only to expert witnesses, not to fact witnesses such as Prochnow. As such, counsel's failure to object based on an inapplicable evidence rule does not fall below an objective standard of reasonableness as measured by prevailing professional standards. Similarly, counsel's failure to move for a mistrial or jury admonition similarly does not establish his performance was deficient. Counsel did object to the question here at issue. Article 771 does not require counsel to seek either an admonition or mistrial; rather, it empowers a court to grant them in certain circumstances. Recalling the strong presumption of professional competence or sound trial strategy and the requirement of deference to the trial court, the Court finds Johnson has failed to demonstrate counsel's performance was deficient with regard to his response to this testimony by Prochnow.

In addition, Johnson has not demonstrated a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *See Martin*, 796 F.2d at 816. The burden is on Johnson to "affirmatively prove," not just allege, prejudice. *Day*, 566 F.3d at 536. Johnson has not met this burden. In fact, he presents no argument or evidence that the trial court would either have found the requirements of Article 771 met such that an admonishment was required to be given or that the state court would have granted a mistrial. In focusing his arguments solely on the first prong of *Strickland*, Johnson has wholly failed to demonstrate prejudice. Because Johnson has not here proven either prong of *Strickland*, this claim for ineffective assistance of counsel by Johnson should also be denied.

---

[70] R. Doc. 1, p. 41.

### 4.    Ineffective Assistance of Appellate Counsel

Johnson's final claim is that he was denied effective assistance of counsel on appeal. As argued by Johnson, the Louisiana Appellate Project, which represented him on direct appeal, failed to raise on appeal "the critical issue of the scope of Ms. Prochnow's testimony," which failure "deprived [him] of his right to counsel in appellate matters."[71]   More specifically, Johnson asserts that Prochnow, a fact witness, impermissibly testified as an expert witness.[72]   Per Johnson,[73]

> [t]hroughout her testimony, Ms. Prochnow stated that she had elicited an enormous amount of evidence, including A.D.'s statements and trust.   She acquired this evidence through her analysis of alleged symptoms of abuse and her use of specific tools and methods of analysis.   These tools and methods of analysis were derived from the expertise, technical knowledge, and training she obtained to become a trauma counselor.   Though [defense counsel] objected, Ms. Prochnow was allowed to give an expert opinion on the results of a psychological trauma session as a fact witness.

Per Johnson, although trial counsel made timely objections, preserving this matter for appeal, appellate counsel did not bring this claim on appeal, instead "only br[inging] the issue of whether there needed to be a *Daubert* hearing prior to Ms. Prochnow's testimony as a 'fact witness.'"[74]

Johnson focuses his argument on the prejudice prong of *Strickland*, arguing, "[t]he outcome of [his] appeal would have been significantly different had LAP extended its assignment of error to include the scope [of] Ms. Prochnow's testimony" because it would "mandate exclusion of the vast majority of Ms. Prochnow's testimony."[75]   Johnson continues that this exclusion, combined with the exclusion of the Gingerbread House interviews because of the unconstitutionality of La. R.S. 15:440.5, "would have left solely the testimony of an eight-year-old child, testimony by a Department of Child and Family Services worker that related to the home

---

[71] R. Doc. 1, p. 42.
[72] R. Doc. 1, p. 43.
[73] R. Doc. 1, p. 42.
[74] R. Doc. 1, p. 43.
[75] R. Doc. 1, pp. 44-45.

conditions of A.D., and a coercive interrogation as evidence for the State's prosecution of Mr. Johnson."[76] Per Johnson, this would have been insufficient for a conviction.[77]

"In reviewing a claim alleging ineffective assistance of appellate counsel we apply the traditional *Strickland* standard." *Blanton v. Quarterman*, 543 F.3d 230, 240 (5th Cir. 2008). "When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown 'that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue' and 'that the attorney's deficient performance led to a fundamentally unfair and unreliable result.'" *Prather v. Quarterman*, No. 08-3416, 2009 WL 1767657, at *6 (S.D. Tex. Jun. 18, 2009), quoting *U.S. v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). Once again, Johnson has failed to meet the prejudice prong of this exacting standard.

First, Johnson has not demonstrated that Prochnow's testimony was, in fact, "expert" testimony. Johnson notes that trial counsel objected twice at trial that the scope of Prochnow's testimony exceeded that of a fact witness, both of which were overruled.[78] Johnson first notes Prochnow's testimony that she acquired "evidence" from A.D. "through her analysis of alleged symptoms of abuse and her use of specific tool and methods of analysis."[79] Johnson continues that "[t]hese tools and methods of analysis were derived from the expertise, technical knowledge, and training she obtained to become a trauma counselor" and that Prochnow ultimately "was allowed to give an expert opinion on the results of a psychological trauma session as a fact witness."[80] However, the Court, in reviewing the testimony of Prochnow at trial, disagrees.

---

[76] R. Doc. 1, p. 45.
[77] R. Doc. 1, p. 45.
[78] R. Doc. 1, pp. 41, 42; R. Doc. 24-3, p. 172 (35: 9-12); R. Doc. 24-3, p. 179 (42:1-4).
[79] R. Doc. 1, p. 42.
[80] R. Doc. 1, p. 42.

In his Petition, Johnson points out the following two portions of Prochnow's testimony, presumably as illustrative of her "expert" testimony. The first is that she and A.D.:[81]

> adjusted behavior chart, identified feelings where he experiences feelings in his body, so sort of building that feelings vocabulary and having him identify where he experiences anxiety or anger, and learned triggers, things that sent him off or make him angry in general or make him anxious and how he's able to recognize his own – be in tune to his body and recognize when he feels upset.

The second is as follows:[82]

> And so we learned about the cognitive triangle, which is simply how thoughts, feelings and behavior are connected, and working on how you can change certain thoughts to help you change your feelings which changes behavior. And I taught him the SUDS scales, which is just an acronym, for the Subjective Units of Distress Scale, which is just a way of measuring how upset am I right now from 0 to 10.

This testimony, however, is simply a recitation of the events—facts—that occurred during her sessions with A.D. Neither in these samples nor elsewhere in her testimony does Prochnow provide an expert opinion. Thus, raising this issue on appeal likely would have been futile and would not have resulted in a different outcome on appeal.

More importantly, courts frequently allow treating practitioners to testify as fact witnesses. *See Talbot v. Elec. Ins. Co.*, No. 17-299, 2018 WL 6274314, at *3 (M.D. La. Nov. 30, 2018) (permitting treating physician to testify as a fact witness, "offering testimony based on the physician's personal knowledge of the examination, diagnosis and treatment of a patient"); *Huval v. La. State Univ. Police Dep't*, No. 16-553, 2018 WL 3199460, at *1 (M.D. La. Jun. 29, 2018) (recognizing defendants' concession that plaintiff's treatment team, including a social worker, could testify as fact witnesses about the treatment they provided plaintiff and their diagnoses).

---

[81] R. Doc. 1, pp. 42-43; R. Doc. 24-3, p. 171 (34:2-9).
[82] R. Doc. 1, p. 43; R. Doc. 24-3, p. 171 (34:13-21).

Second, extensive other evidence of Johnson's guilt was introduced at trial.  Such evidence includes, *inter alia*, the videotaped Gingerbread House interviews;[83] the testimony of A.D., D.N., and E.N.;[84] and the testimony of Alex Person.[85]  In light of this other evidence, Johnson has failed to show that by permitting the testimony of Prochnow, the results of Johnson's trial were fundamentally unfair and unreliable.  Similarly, Johnson has failed to demonstrate with reasonable probability that, had this challenge to the scope of Prochnow's testimony been raised on appeal, the outcome of said appeal would have been different.  As such, the Court finds that Johnson has not carried his burden of proof for a claim of ineffective assistance of appellate counsel and recommends that this claim be denied.

### D.    A Certificate of Appealability Should be Denied

Should Johnson pursue an appeal, a certificate of appealability should be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1).  Although Johnson has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Pippin v. Dretke*, 434 F.3d 782, 787

---

[83] R. Doc. 24-3, p. 34.
[84] R. Doc. 24-3, pp. 26-41; R. Doc. 24-3, pp. 41-63; R. Doc. 24-3, pp. 63-80.
[85] R. Doc. 24-3, pp. 85-105.

(5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Reasonable jurists would not debate the denial of Johnson's Petition or the correctness of the substantive rulings. Accordingly, it is appropriate that, if Johnson seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## III.    RECOMMENDATION

**IT IS RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody filed by Edward K. Johnson (#379494) be **DENIED** and **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED** if Petitioner seeks to pursue an appeal.

Signed in Baton Rouge, Louisiana, on September 12, 2023.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**